# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA WOODARD, NEIL WESTFALL, ALEX SHELNUTT, and JEREMY MCKINNON, all professionally known as A DAY TO REMEMBER, | ) ) ) ) ) | No. 14 CV 1887 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| VICTORY RECORDS, INC. and ANOTHER VICTORY, INC., | ) ) | |
| | ) | May 21, 2014 |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

On November 7, 2013, this court issued an opinion and order finding that attorney-client privilege did not attach to certain documents shared with non-party John Janick. On December 23, 2013, Janick produced some documents in response to a subpoena served on him by Defendants and submitted a privilege log shortly thereafter. Plaintiffs then filed the current motion to quash or modify the subpoena on the basis of attorney-client privilege and work-product protection. On May 13, 2014, this court ordered Plaintiffs to submit the documents identified on the privilege log to the court for an *in camera* inspection. Having completed its review, the court finds that Janick properly withheld some, but not all of the documents identified on the privilege log. For the following reasons Plaintiffs' motion is granted in part and denied in part:

## Background

The court has described portions of this case's background facts and procedural history in previous opinions resolving Plaintiffs' motion for a protective order seeking to prohibit Defendants from using allegedly privileged documents in Janick's deposition, *see Woodard v. Victory Records, Inc.*, No. 11 CV 7594, 2013 WL 4501455, at *1 (N.D. Ill. Aug. 22, 2013), and Defendants' motion for an order declaring certain emails unprotected by the attorney-client privilege, *see Woodard v. Victory Records, Inc.*, No. 11 CV 7594, 2013 WL 5951768, at *1-2 (N.D. Ill. Nov. 7, 2013) (the "Order"). What follows are the facts and allegations most pertinent to the questions presented in the current motion.[1]

According to Plaintiffs (or "the Band"), in August 2009 they hired Mark Mercado and John Youngman of FlySouth Music Group, Janick of the Fueled By Ramen record label, and Jason Childress and Noel Hartough of Curo Financial, LLC, as managers. (R. 1, Pls.' Mot. at 2.) Plaintiffs state that shortly after being hired, the managers sought advice from their attorneys at the time, Nick Ferrara and Mike McCoy of Serling Rooks & Ferrara, LLP, regarding the Band's deteriorating relationship with Defendants. (Id. at 3.) When that relationship failed to improve, Plaintiffs retained attorneys Jeff Leven and Danny Hayes of Davis Shapiro Lewitt & Hayes, LLP, in late August 2010 and retained attorney Jay

---

[1] Record documents from related Case No. 11 CV 7594 are cited herein as "R.C. __." Record documents from Case. No. 14 CV 1887, the above-captioned proceeding, are cited herein as "R. __."

Bowen of Bowen Hayes & Kreisberg, PLC, as litigation counsel in late September 2010. (Id. at 3-4.)

Plaintiffs filed this lawsuit against Defendants on May 31, 2011, in the Middle District of Tennessee, seeking the following: (1) declaratory judgment that Plaintiffs had satisfied their obligations under an agreement they signed with Defendants ("the Deal Memo"); (2) declaratory judgment that Plaintiffs own copyrights in all recordings and compositions created during the term of the Deal Memo; (3) judgment on a breach of contract claim for Defendants' failure to pay royalties; (4) equitable accounting to determine the extent of Defendants' breaches; and (5) judgment on Tennessee consumer protection claims. (R.C. 1, Compl.)

The case was transferred to this district in October 2011 pursuant to 28 U.S.C. § 1406(a). (R.C. 41, Order.) In July 2012, Plaintiffs inadvertently produced a set of allegedly privileged emails to Defendants during the course of discovery. (R. 1, Pls.' Mot. at 9.) Will Parsons, an attorney for Plaintiffs, sent Defendants' counsel Richard Meloni a letter on July 25, 2012, asking him to destroy all copies of the emails. *Woodard*, 2013 WL 4501455, at *1. Although the parties dispute how Meloni responded to Parsons's letter, nothing happened with those documents until a year later in June 2013 when Meloni asked Mercado questions about the documents during a deposition over Parsons's objection. *Id.*

On July 10, 2013, Defendants served a subpoena on Janick issuing from the Central District of California ("the Subpoena") commanding him to appear on July 31, 2013, to provide testimony and documents related to this action. (R. 17-14,

Janick Subpoena.) On July 24, 2013, Plaintiffs moved for a protective order demanding the return of the allegedly privileged emails they inadvertently disclosed and which Defendants used during Mercado's deposition, and asking this court either to prohibit the use of those documents at Janick's upcoming deposition or to stay his deposition pending resolution of Plaintiffs' claim of privilege.

On August 22, 2013, this court first explained in an opinion and order that it lacked jurisdiction and adequate information to address the issue of whether the documents were in fact privileged. *Woodard*, 2013 WL 4501455, at *2 n.3. This court then ordered Defendants to sequester or destroy the communications and refrain from using them, or Mercado's testimony based on them, until the issue of privilege could be resolved. *Id.* at *4. The court also ordered Defendants to refrain from using the documents during Janick's deposition if they wished to proceed with the deposition prior to a privilege determination being made. *Id.* On September 3, 2013, Janick formally objected to the Subpoena on the basis of attorney-client privilege and the attorney work-product doctrine, among other reasons. (R. 17-18, Janick's Objections at 2-3.)

Defendants filed a "Motion for Order of Waiver of Privilege" a week later on September 10, 2013, challenging Plaintiffs' assertion of privilege over the inadvertently disclosed documents with the aim of using them in Janick's deposition. (R.C. 207, Defs.' Mot. Order of Waiver at 2-3.) In its Order on November 7, 2013, this court applied Illinois law to conclude that based on the information provided by the parties, Janick did not have an agency relationship

with Plaintiffs, so email communications shared with Janick lacked the requisite confidentiality for attorney-client privilege to attach. *Woodard*, 2013 WL 5951768, at *3, *7. This court ultimately found that all but two of the documents were not privileged and could be used by Defendants for any purpose related to this litigation. *Id.* at *7.

The next day on November 8, 2013, Meloni forwarded a copy of the Order to JoAn Cho, Janick's counsel at the time and counsel for Universal Music Group ("UMG"), renewing Defendants' demand that Janick produce any documents responsive to the Subpoena previously withheld on the basis of privilege. (R. 17-22, Meloni Email to Cho, Nov. 8, 2013 at 1.) On November 15, 2013, Cho replied saying she would consider the Order but noted that "the subpoena does not require the production of documents prior to the deposition." (R. 17-22, Cho Email to Meloni, Nov. 15, 2013 at 1.) On November 18, 2013, Meloni sent a letter to Cho in which he wrote "during the past few months, we had agreed to adjourn Mr. Janick's deposition on several occasions . . . . Whatever the reasons, it was pursuant to the mutual agreement between me, you and counsel for the band." (R. 17-25, Meloni Letter to Cho, Nov. 18, 2013 at 3.) Meloni also warned Cho that asserting the right to withhold production until the date of deposition would "not only impede the expediency that would otherwise occur if we had the documents now," but that he might also "seek the Court's intervention, including a motion to bring Mr. Janick back for an additional day of deposition, or for sanctions should the document production fail to redress the improper objections relating to confidentiality and

attorney-client privilege[.]"  (Id. at 4.)  Meloni concluded his letter by renewing his request that Janick produce the documents called for in the Subpoena.  (Id.)

On November 21, 2013, Cho informed Meloni that she was recommending that Janick retain separate counsel.  (R. 17-1, Meloni Decl. ¶ 51.)  On December 4, 2013, Janick retained Donald Zakarin as his new attorney and the parties agreed to adjourn Janick's deposition again to accommodate Zakarin's transition.  (Id. ¶¶ 52-53.)  On December 10, 2013, Meloni emailed Zakarin asking whether he was "agreeable to producing documents in advance of the deposition once we schedule it."  (R. 17-26, Meloni and Zakarin Emails, Dec. 10, 2013.)  Zakarin responded by proposing the week of January 20, 2014, for Janick's deposition.  (Id.)  Zakarin also noted that he was still getting "up to speed" but understood that Bowen, Plaintiffs' litigation counsel, had "issues" with the documents sought in the Subpoena.  (Id.)

On December 23, 2013, Janick produced approximately 1,400 pages of emails responsive to the Subpoena's document requests, followed by a privilege log on January 9, 2014, listing 28 emails withheld from production on the basis of attorney-client privilege and the attorney work-product doctrine.  (See R. 31, Meloni Reply Decl. ¶¶ 60-61.)  On January 21, 2014, Plaintiffs filed the instant motion in the Central District of California.  (R. 1, Pls.' Mot.)[2]  Defendants filed their amended opposition and cross-motion on February 4, 2014.  (R. 17, Defs.' Opp.)[3]  Plaintiffs

[2]  Plaintiffs' Notice of Motion was amended on January 31, 2014, to correct filing deficiencies.  (R. 11; R. 12.)

[3]  Defendants' original filing on February 3, 2014, was stricken for failure to comply with local rules.  (R. 16.)

filed their opposition to Defendants' cross-motion, along with a reply in support of their motion, on February 21, 2014. (R. 28, Pls.' Opp.; R. 29, Pls.' Reply.) On March 3, 2014, Defendants filed a reply in support of their cross-motion. (R. 30, Defs.' Reply.) On March 12, 2014, the Central District of California granted Defendants' cross-motion and transferred Plaintiffs' motion to this district. (R. 39, Order at 3.) On April 21, 2014, the assigned district judge referred Plaintiffs' motion to this court for resolution. (R. 44.)

On May 13, 2014, the court ordered Plaintiffs to turn over the 28 emails at issue for an *in camera* review. According to their privilege log, Plaintiffs are asserting attorney-client privilege over all 28 emails and work-product protection over 20 of the 28 emails. (R. 1, Pls.' Mot., Ex. 1.) Janick is listed as a recipient on all of the correspondence, with one exception.[4]

## Analysis

The procedure governing the issuance of subpoenas is set forth in Federal Rule of Civil Procedure 45. *Ott v. City of Milwaukee*, 682 F.3d 552, 556 (7th Cir. 2012). Rule 45(d)(3)(A) provides that the court must quash or modify a subpoena if it "requires disclosure of privileged or other protected matter" or if it "subjects a person to undue burden." The party seeking to quash a subpoena has the burden of demonstrating that it meets these requirements. *See Pac. Century Int'l, Ltd. v. Does*

---

[4] Doc. No. 2 on the privilege log is a March 10, 2010 email from Youngman to Ferrara, copying Mercado. (R. 1, Pls.' Mot., Ex. 1 at 1.) Although it is unclear how Janick came to possess this document, the court assumes for the purposes of this motion that the email was somehow shared with Janick since he listed it on the privilege log.

*1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012).  Whether to quash a subpoena is a matter within the court's discretion.  *Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008).

## A.    Timeliness of Motion and Objections

This court first addresses Defendants' contention that Plaintiffs' current motion and Janick's written objections to the Subpoena are both untimely.  (R. 17, Defs.' Opp. at 16.)   Defendants contend that since the Order was issued on November 7, 2013, Plaintiffs' decision to wait until January 21, 2014, to challenge the subpoena is untimely because Defendants never extended Plaintiffs' time to file a motion to quash.  (R. 17, Defs.' Opp. at 16.)  Plaintiffs argue in response that their motion is timely because it was filed before the Subpoena's actual date of compliance.  (R. 28, Pls.' Opp. at 2.)  Specifically, Plaintiffs argue that because the Subpoena requires Janick to produce responsive documents at his deposition, not before, and because the parties adjourned his deposition indefinitely, the date of compliance has not lapsed.  (Id. at 2-3.)

Although Rule 45(d)(3)(A) does not define what constitutes a timely motion, courts in this district have previously held that a motion to quash is timely when made at or before the time of compliance.  *See Massood Jallali v. Nova Se. Univ.*, No. 11 CV 8115, 2012 WL 2368322, at *3 (N.D. Ill. June 21, 2012) (citations omitted); *Flagstar Bank, FSB v. Freestar Bank, N.A.*, No. 09 CV 1941, 2009 WL 2706965, at *3 (N. D. Ill. Aug. 25, 2009); *see also NLFC, Inc. v. Devcom Mid–Am.*, No. 93 CV 0609, 1994 WL 188478, at *9 n.2 (N.D. Ill. May 11, 1994) (leaving open the question of whether a motion to quash or modify a subpoena can be made after

the date of compliance). Another court in this district has also noted that the absence of a required subpoena compliance time in the rule "implicitly advises that the time chosen is made on a case-by-case basis and based on the circumstances of each case." *See Flagstar Bank*, 2009 WL 2706965, at *3.

Here the course of conduct between the parties and the Subpoena's own terms lead this court to find that Plaintiffs' motion is timely. Although the Subpoena initially set Janick's deposition for July 31, 2013, the parties agreed on multiple occasions to adjourn it. (See R. 17-25, Meloni Letter to Cho, Nov. 18, 2013 at 3.) Even prior to July 31, 2013, Plaintiffs moved for a protective order seeking in part to stay Janick's deposition until the privilege issue was resolved. (R.C. 153, Pls.' Mot. for Protective Order at 1.) Rather than demonstrating negligence in responding to the Subpoena, Plaintiffs and Janick remained in contact with Meloni concerning Janick's compliance. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 52 (S.D.N.Y. 1996) (motion timely because parties were in frequent contact prior to motion being filed).

Furthermore, even though Defendants argue that they never extended Plaintiffs' time to file a motion to quash, Meloni's correspondences with Cho and Zakarin appear to concede that the Subpoena does not require Janick to produce documents prior to his deposition. (R. 17-25, Meloni Letter to Cho, Nov. 18, 2013 at 4.) Meloni communicated to Cho that he believed an earlier production would be more efficient and warned that he might otherwise be forced to file a "motion to bring Mr. Janick back for an additional day of deposition, or for sanctions" if the

document production turned out to be insufficient. (Id.) Defendants did not, however, move to compel the documents, insist that the documents had to be produced at an earlier time, or otherwise take the position that the Subpoena's date of compliance had passed. Meloni also emailed Zakarin in December 2013 asking whether he was "agreeable to producing documents in advance of the deposition once we schedule it." (R. 17-26, Meloni Email to Zakarin, Dec. 10, 2013.) Rather than asserting that the documents were due, Defendants' communications indicate that negotiations regarding Janick's future deposition were ongoing. As such, this court does not find Plaintiffs' current motion to be untimely.

As for the timeliness of Janick's objections, Rule 45(d)(2)(B) provides that a person subject to a subpoena may serve written objections to producing requested documents, and that those objections must be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served." The Subpoena was served on July 10, 2013, and Janick served his objections to the Subpoena on September 3, 2013. (R. 17-18, Janick's Objections at 2-3.) Even though Janick served his objections after the 14-day time period, Rule 45 does not require that objections be served prior to filing a motion to quash. *See Cent. States v. GWT 2005 Inc.*, No. 06 CV 1205, 2009 WL 3255246, at *1 (N.D. Ill. Oct. 6, 2009) ("Rule 45[(d)](2)(B) is permissive in nature, and merely describes one avenue down which a person served with a subpoena may challenge the subpoena."). Furthermore, this court's reasoning regarding the current motion's timeliness also applies to Janick's objections. The fact that the parties agreed to put off the deposition weighs against

finding that Janick or the Plaintiffs waived the right to assert objections. *See Fujisawa Pharm. Co. v. Kapoor*, 162 F.R.D. 539, 540-541 (N.D. Ill. 1995) (taking into account that the litigants agreed to put off a deposition in determining subpoena objections were not untimely, despite failure to meet the rule's 14-day deadline). While the court does not wish to condone a party's failure to challenge a subpoena within the time delineated by the rules, it concludes on the present record that Janick's and the Plaintiffs' conduct was not so negligent as to time-bar them from being heard in opposition to the Subpoena.

## B.     Choice-of-Law

This court next determines which law should apply. In the briefing on Plaintiffs' motion for a protective order and Defendants' "Motion for Order of Waiver of Privilege," both parties cited to Illinois cases and neither side argued that another jurisdiction's laws should govern the issue of privilege. (See, e.g., R.C. 153, Pls.' Mot. for Protective Order at 6; R.C. 207, Defs.' Mot. Order of Waiver at 2-3.) Defendants contend that as a result, Plaintiffs are bound by their previous reliance on Illinois law. (R. 17, Defs.' Opp. at 4 & n.10.) Plaintiffs argue that under Illinois's "most significant relationship" choice-of-law test, California law applies.[5] (R. 28, Pls.' Opp. at 5 n.4.)

---

[5] Plaintiffs also assert that California law applies to their motion because "where the court hearing the discovery dispute and the court hearing the underlying action differ, the court hearing the discovery dispute must apply the choice of law rules of its forum." (R. 1, Pls.' Mot. at 15 (citing *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 423 (C.D. Cal. 1999).) Because this court is now hearing both the discovery dispute and the underlying action, this argument no longer applies.

This court finds that Plaintiffs have waived their choice-of-law argument. *See Vukadinovich v. McCarthy,* 59 F.3d 58, 62 (7th Cir. 1995) ("[C]hoice of law, not being jurisdictional, is . . . waivable."). In relying solely on Illinois law, Plaintiffs' previous briefs did not assert that California law controlled or cite to any California cases. *See Fidelity & Deposit Co. v. Krebs Eng'rs*, 859 F.2d 501, 504 (7th Cir. 1988); *XPO Logistics, v. Gallatin*, 2013 WL 3835358, at *5 n.5 (N.D. Ill. July 24, 2013) (applying Illinois law in part because the parties did not raise choice-of-law issues). As a result, this court applied Illinois law and explicitly noted in the Order that the applicable law was "not in dispute." *Woodard*, 2013 WL 5951768, at *3; *see also Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009) (finding that when parties fail to raise choice-of-law issues, a court sitting in diversity applies the substantive law of the state in which it sits). Since Plaintiffs did not raise any choice-of-law issues in previous briefing on whether privilege should attach to Janick's documents, they cannot do so here. *See Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 221 (7th Cir. 1996) (finding that the parties waived the choice of law issue by failing to timely raise it earlier in the proceedings); *Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1231 n.1 (7th Cir. 1985) (noting that acquiescence to court's choice-of-law amounts to waiver of any objection to such choice).

## C.     Law of the Case

The court next addresses what effect the Order has on the current motion. Defendants contend that the Order is the "law of the case" concerning the

application of privilege to any documents circulated to Janick, including the communications at issue in this motion. (R. 17, Defs.' Opp. at 17.) Plaintiffs argue that the law of the case doctrine is inapplicable because the Order is not a final judgment and because its scope is limited to whether attorney-client privilege applied to the specific documents previously at issue in Defendants' "Motion for Order of Waiver of Privilege." (R. 28, Pls.' Opp. at 3-5.)

The law of the case doctrine establishes a presumption that a court will adhere to a ruling it made at one stage of a lawsuit for the duration of the suit. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); *Avitia v. Metro. Club of Chi.*, 49 F.3d 1219, 1227 (7th Cir. 1995). But the doctrine is not rigid, and a court has discretion over whether to reexamine an earlier ruling. *See Avitia*, 49 F.3d at 1227; *see also Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004) (law of the case doctrine is not a "hard and fast" rule). The doctrine applies only to issues that were decided, not those which might have been decided but were not. *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1032 (7th Cir. 1997). Also, contrary to Plaintiffs' contention, applying the discretionary law of the case doctrine in this proceeding does not require final adjudication of all the claims of the parties. *See, e.g., Williams v. Comm'r*, 1 F.3d 502, 504 (7th Cir. 1993).

This court will not deviate from its original ruling that privilege does not attach to emails shared with Janick. Though Plaintiffs argue that the Order should only apply to the documents at issue then, the court's decision was primarily based on the nature of Janick's relationship with the Band, not the content of the emails

themselves.  *Woodard*, 2013 WL 5951768, at \*5-8.  This court relied heavily on Plaintiffs' testimony and declarations by Mercado and Janick in determining that Janick's inclusion in those communications destroyed the requisite confidentiality for attorney-client privilege to attach.  *Id.*  Furthermore, as with the previous set of emails, Janick's involvement in the emails at issue here is minor and hardly suggestive of an integral role.  He is included as a recipient on most of the emails, but only appears to contribute to conversations on a couple occasions.  (Doc. Nos. 7 and 28.)  As such, this court's determination that Janick did not serve as Plaintiffs' agent still applies to the documents at issue in the current motion.

Plaintiffs further contend that two emails not previously disclosed to the court prove Janick's agency relationship with the Band.  (R. 1, Pls.' Mot. at 7-8.) Setting aside the fact that this evidence was not properly presented during previous briefing, nor in a motion for reconsideration, these two emails are still insufficient to persuade this court to change its earlier ruling.  The first document Plaintiffs rely on is a September 5, 2009 email from Plaintiff Josh Woodard to Mercado and Janick in which he states, in relevant part, "I speak for everyone in the band in saying that we are very excited to be working with you guys now."  (R. 4, Mercado Decl., Ex. 1 at 1.)  But this statement and the rest of the email only establish the existence of a business relationship between Janick and Plaintiffs and do not sufficiently demonstrate that Janick had authority to act on Plaintiffs' behalf.  *See Lang v. Consumers Ins. Serv., Inc.*, 222 Ill. App. 3d 226, 232 (1991).  Such a general statement also does not outweigh the substantial deposition testimony discussed in

the Order undermining Plaintiffs' contention that Janick acted as their manager. *See Woodard*, 2013 WL 5951768, at *5-6 (noting that "none of the testimonial evidence from the Band members suggests that Janick occupied a role within the Band's inner circle").

Plaintiffs also cite to a September 8, 2009 email in which the band's booking agent, Dave Shapiro, introduces Mercado and Janick to his staff by writing "Mark and [Janick] are the new management team for [Plaintiffs.]" (R. 4, Mercado Decl., Ex. 2.) Although this email is more supportive of Plaintiffs' argument, its probative value is weakened by the fact that it was not sent by one of the Plaintiffs. *See Lang*, 222 Ill. App. 3d at 232 ("[T]he authority of an agent may only come from the principal, and the authority, therefore, must be traced to some word or act of the alleged principal[.]"). The email is insufficient to establish that Plaintiffs gave Janick a grant of authority to act on their behalf. *See Kaporovskiy v. Grecian Delight Foods, Inc.*, 338 Ill. App. 3d 206, 210 (2003) (finding that only the alleged principal's words and conduct establish the agent's authority). Furthermore, neither of the above emails shows that Janick assisted Plaintiffs' attorneys in giving legal advice. *See Heriot v. Byrne*, 257 F.R.D. 645, 655 (N.D. Ill. 2009).

In light of Plaintiffs' deposition testimony that Mercado and Youngman were their "main" managers and that Janick at most provided advice as a consultant and not as an agent, these additional emails do not sway the court to alter its original ruling that documents including Janick are not attorney-client privileged. *See Woodard*, 2013 WL 5951768, at *5-6. Accordingly, this court finds that any

documents at issue in the current motion which were shared with Janick are not protected by the attorney-client privilege.

That being said, although the court applies its previous reasoning to Plaintiffs' assertion of attorney-client privilege, the law of the case doctrine does not apply to Plaintiffs' assertion of the work-product doctrine because the court did not address that topic in the Order or otherwise. *See Woodard*, 2013 WL 5951768, at *1 n.2 (noting that Plaintiffs did not assert that the emails in question fell within work-product doctrine protection). Therefore this court will next address whether the documents at issue in this motion are protected by the attorney work-product doctrine.

### D.     Attorney Work-Product Doctrine

The work-product doctrine is governed by federal law in this diversity action and codified in Rule 26(b)(3), which provides that a party may not discover materials that are documents or tangible things prepared in anticipation of litigation or for trial by or for a party or its representative. *See Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 612 (N.D. Ill. 2000). Work product falls into two categories: "fact" work product and "opinion" work product. *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002). While fact work product includes raw factual information, opinion work product includes an attorney's mental impressions, conclusions, opinions, or legal theories. *Doe v. Soc'y of the Missionaries of the Sacred Heart*, No. 11 CV 2518, 2014 WL 1715376, at *3 (N.D. Ill. May 1, 2014).

Fact work product is subject to discovery when the seeking party demonstrates a substantial need for the materials and an inability to obtain the substantial equivalent of the information without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); *Doe*, 2014 WL 1715376, at *3. However, courts afford more scrupulous protection to opinion work product because Rule 26 mandates that a court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B); *see Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009).

Even so, both types of work-product privilege are subject to waiver. *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 215 (N.D. Ill. 2001). Work-product protection may be waived where the communications are disclosed in a manner which substantially increases the opportunity for potential adversaries to obtain the information. *See Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003) (citations omitted); *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, No. 00 CV 2855, 2001 WL 1397876, at *3 (N.D. Ill. Nov. 6, 2001) (citation omitted). Because work-product protection is designed to protect an attorney's trial preparation and mental processes from discovery by an adversary, voluntary disclosure to an adversary almost invariably constitutes waiver. *See Eagle Compressors*, 206 F.R.D. at 479 (citation omitted). The focus however is not on whether the disclosure was voluntary, but on whether the information was

disclosed to an adversary. *In re Bank One Sec. Litig.*, 209 F.R.D. 418, 424 (N.D. Ill. 2002).

In this case, Defendants argue that because the Order stated that the requisite confidentiality for attorney-client privilege to attach did not exist for communications including Janick, work-product protection also should not apply. (R. 17, Defs.' Opp. at 2 n.3.) Even if it does apply, Defendants contend, disclosure to Janick waived any work-product protection because such disclosure "was inconsistent with maintaining secrecy and substantially increased the opportunity for [Defendants] to obtain the information from non-parties, including though [sic] separate subpoenas to Janick, [UMG] and [Warner Music Group]." (Id. at 4, 18-19.) Plaintiffs counter that while confidentiality is an element of attorney-client privilege under Illinois law, the same requirements for confidentiality do not apply to attorney work product under federal standards. (R. 29, Pls.' Reply at 3.) Plaintiffs further argue that because the disclosure of information to Janick was not done with the intention or reasonable probability that Defendants might see the documents, there was no waiver of work-product protection. (Id. at 3-4.)

This court agrees with Plaintiffs that any previous determination regarding confidentiality in the attorney-client privilege context is not dispositive of whether work-product protection applies to the documents at issue here. Attorney-client and work-product protections are two independent privileges which require separate analyses and reflect different policies. *Eagle Compressors*, 206 F.R.D. at 479; *Caremark*, 195 F.R.D. at 613. While attorney-client privilege is often considered

waived by voluntary disclosure, only disclosures that are "inconsistent with the adversary system" are deemed to waive work-product protection. *Id.* (citations and quotations omitted). Work-product protection is broader than attorney-client privilege. *See Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1024 (7th Cir. 2012) (citing *U. S. v. Nobles*, 422 U.S. 225, 238 n.11 (1975)). Moreover, the work-product doctrine, unlike the attorney-client privilege, is a doctrine governed by federal law. *See* Fed. R. Civ. P. 26(b)(3).

The next step then is to analyze whether the work-product privilege applies to the 20 documents over which Plaintiffs have asserted protection. In deciding whether documents are protected as work product, the court must first determine at what point Plaintiffs reasonably anticipated litigation. *See Lewis v. Keen Transp., Inc.*, No. 09 CV 3912, 2011 WL 814860, at *3 (N.D. Ill. Feb. 28, 2011). Work-product protection does not apply if the prospect of future litigation was remote at the time the document was created. *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013) (citing *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983)). Rather, courts look to whether, in light of the factual context, the document was prepared or obtained because of the prospect of litigation. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996) (citations omitted). A document created when litigation is only "in the air" is not work product. *See Lewis*, 2011 WL 814860, at *3. The mere fact that a party may have had a claim is also insufficient; a substantial and significant threat of litigation has to exist. *Id.* at *4.

The court must also examine whether the sought-after documents convey an attorney's thought processes and mental impressions. *See Sandra T.E.*, 600 F.3d at 621-22. Documents created in the ordinary course of business or that would have been created irrespective of litigation are not entitled to work-product protection. *See Caremark,* 195 F.R.D. at 614; *see also RBS Citizens,* 291 F.R.D. at 219. Documents that are not primarily legal in nature are also not protected under the work-product doctrine. *See Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981) ("Only where the document is primarily concerned with legal assistance does it come within [attorney-client or work-product] privileges."). In other words, the "primary motivating purpose behind the creation of a document" must be to aid in possible future litigation. *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008). But the work-product doctrine extends to documents prepared by a party's representative or agent, not just the attorney. *See Breneisen v. Motorola, Inc.*, No. 02 CV 50509, 2003 WL 21530440, at *5 (N.D. Ill. July 3, 2003) (citing *Ventre v. Datronic Rental Corp.*, No. 92 CV 3289, 1993 WL 524377, at *3 (N.D. Ill. Dec. 13, 1993)).

As the objecting party, Plaintiffs bear the burden of proving that the work-product doctrine applies. *See Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 460-61 (N.D. Ill. 2008). In support of their position, Plaintiffs have produced declarations from Mercado, Bowen, and Leven, all of whom were either senders or recipients of portions of the 20 communications over which Plaintiffs assert work-product protection. (See R. 1, Pls.' Mot., Ex. 1.)

After conducting an *in camera* examination of each document, this court finds that Doc. Nos. 8-10, 13-16, 18, and 20-21 are not entitled to work-product protection. Doc. Nos. 8-10 consist of emails sent between September 1 and September 3, 2010. (R. 1, Pls.' Mot., Ex. 1 at 2-3.) Although these documents may have been created when litigation was "in the air," Plaintiffs themselves acknowledge that as of August 2010 they still hoped to resolve their issues with the Defendants amicably. (R. 1, Pls.' Mot. at 3.) At that point litigation was only a "contingency plan," not a substantial and significant threat. (See id. at 3-4); *see also Lewis*, 2011 WL 814860, at *4. The documents themselves do not indicate that Plaintiffs had changed their posture by the time Doc. Nos. 8-10 were sent in early September 2010. As for Doc. Nos. 13-16, 18, and 20-21, work-product protection does not apply to these emails because they are not primarily concerned with legal assistance, nor do they appear to contain an attorney's thought processes or mental impressions pertaining to the litigation in this case.

This court finds that Doc. Nos. 12, 17, 19, and 22-28, which were created between November 5, 2010, and April 12, 2011, are entitled to work-product protection in part because they satisfy the requirement of being prepared in anticipation of likely litigation. They are also protected because they convey attorneys' thought processes and mental impressions. Doc. Nos. 12 and 24-26 contain attorneys' legal analysis of Plaintiffs' rights and obligations under the Deal Memo. Doc. Nos. 17 and 19 consist of attorneys' draft correspondence regarding legal issues in this litigation, and Doc. Nos. 23 and 27 were compiled for the

purposes of assisting attorneys with this case. *See Breneisen*, 2003 WL 21530440, at *5. Doc. No. 22 conveys an attorney's mental impressions regarding communications with Plaintiffs' former counsel and Doc. No. 28 includes legal analysis of Plaintiffs' rights and obligations.

Defendants do not dispute that the communications at issue were prepared in anticipation of litigation or for trial, nor do they dispute that the documents were prepared by or for Plaintiffs or their representatives. They also have not argued that they have a substantial need for the materials and are unable to obtain the equivalent of the information without undue hardship, so it is unnecessary for this court to decide whether the protected documents are fact work product or opinion work product. Instead Defendants focus most of their attention on arguing that Plaintiffs waived all work-product protection.

The court finds that Plaintiffs did not waive work-product protection over the communications at issue merely by disclosing them to Janick, a non-adverse third party. What constitutes waiver with respect to work-product materials depends upon the circumstances. *Eagle Compressors,* 206 F.R.D. at 479 (citing *Nobles*, 422 U.S. at 240, n.14). In this case, the nature of the disclosure is not commensurate with the types of disclosure courts have found result in waiver. *See, e.g., Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1025 (7th Cir. 2012) (holding that the government waived work-product immunity for portions of documents disclosed in consent decrees); *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. at 534 (party waived work-product protection over material that was disclosed in a publicly filed

petition). This is not a case where Plaintiffs have provided work-product documents to Defendants or other parties with conflicting interests, or have failed to even assert work-product protection. *See Adkins Energy, LLC v. Farmland Mut. Ins. Co.*, No. 04 CV 50482, 2009 WL 1259344, at *3 (N.D. Ill. May 6, 2009) (finding waiver where a party presented an otherwise protected document as an exhibit during an adversarial arbitration); *W. United Life Assur. Co. v. Fifth Third Bank,* No. 02 CV 7315, 2004 WL 2583920, at *3 (N.D. Ill. Nov. 12, 2004) (finding waiver where party never asserted work-product protection in response to a subpoena and produced documents without taking any steps to safeguard their contents). There was no intention or reasonable probability that providing documents to Janick would somehow result in disclosure to Defendants. Although the evidence may be insufficient to demonstrate that Janick had an agency relationship with Plaintiffs, there is no evidence that he had an adversarial relationship with the Band at the time of disclosure. And the mere fact that Janick's email data might have been hosted on servers owned by third parties is insufficient to constitute waiver.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion to Quash or Modify Subpoena is granted in part and denied in part. Plaintiffs are ordered to produce Doc. Nos. 1-11, 13-16, 18, and 20-21 on their privilege log to Defendants on or before June 6, 2014. The remaining documents are properly withheld under the work-product privilege.

**ENTER:**

_____

**Young B. Kim**
**United States Magistrate Judge**